UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4454 PSG (AJWx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | Michael Tubbs et al. v. AdvoCare International, L.P. et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Cheryl Wynn | Not Reported |
| Relief Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** Order GRANTING Defendant's motion to dismiss

Before the Court is a motion to dismiss filed by Defendant AdvoCare International, L.P. ("Defendant" or "AdvoCare"). *See* Dkt. # 54 ("*Mot.*"). Plaintiffs Michael Tubbs and Ebony Baker ("Plaintiffs") oppose the motion, *see* Dkt. # 55 ("*Opp.*"), and Defendant replied, *see* Dkt. # 56 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. Having considered the moving papers, the Court **GRANTS** Defendant's motion.

I.   Background

For the third time, the Court considers the adequacy of Plaintiffs' complaint, which alleges various violations of California consumer protection laws.

A.   Factual History

This action stems from illicit business practices allegedly perpetrated by Defendant with regards to its energy and weight-loss products.

Defendant produces, distributes, and markets a line of products under the "24-Day Challenge" banner, which is sold as "a comprehensive supplementation and nutrition program designed to give your body the jumpstart it needs" and assist consumers with their "weight management, energy, overall body composition [and] overall wellness." *See Third Amended Complaint*, Dkt. # 53, ¶ 1 ("*TAC*"). The 24-Day Challenge line includes AdvoCare Spark® ("Spark"), which is also marketed as a stand-alone product. *Id.* ¶ 2. Plaintiffs claim that Defendant has made various assertions through mass advertising regarding the health benefits of Spark, including that it: is a "unique multi-nutrient system that was developed as a nutritional source of energy and enhanced mental focus"; "enhances mental energy and focus"; contains "more than 20 vitamins, minerals and nutrients that work synergistically to provide a healthy,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4454 PSG (AJWx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | Michael Tubbs et al. v. AdvoCare International, L.P. et al. | | |

balanced and effective source of energy that won't overburden or over stimulate your body"; is a "source of long-lasting energy and heightened mental focus and performance"; and contains "neuroactive amino acids that help increase your mental focus and alertness by supporting your brain's ability to receive and send messages." *Id.* ¶ 3. Plaintiffs assert that "[i]t in fact does none of this . . . and do[es] in fact burden and over stimulate one's body." *Id*. Although Spark includes caffeine and taurine, an ingredient alleged to provide extra stimulation, Plaintiffs contend that scientific research "strongly questions taurine's benefits." *Id.* ¶ 24. Indeed, although Defendant's website touts that it "relies on the latest scientific knowledge and highest quality ingredients to create safe and effective products," Plaintiffs allege that others have questioned the efficacy of such products. *Id.* ¶ 26. Specifically, Plaintiffs claim that the "well-respected International Journal of Sport Nutrition and Exercise Metabolism published a study" that "confirmed" that Spark did not provide any energy benefits other than a caffeine boost. *Id.* ¶ 30. In addition, Plaintiffs cite to the research of "Dr. Randall Tackett, a pharmacologist and toxicologist with over 35 years of experience in pharmacology, toxicology, medical research, and public health," who concluded, among other things, that "Spark does not have any benefit that would be more so than ingesting the approximate amount of caffeine in a typical cup of coffee." *Id.* ¶¶ 31–32.

Plaintiffs believe that Defendant has spent "millions of dollars misleading consumers" about its products via a vast array of media. *Id.* ¶¶ 38, 41. Plaintiffs claim they were "lured into becoming consumers of AdvoCare products by its marketing message," and that "they would not have purchased the [products], or would not have paid a premium price for the products," had they "been aware of the truth." *Id.* ¶¶ 44, 52.

Specifically, Plaintiff Tubbs alleges that he purchased Defendant's 24-Day Challenge "bundle," which included various products: "24-Day Challenge Daily Guide, One box of Herbal Cleanse; One box of [AdvoCare] Fiber, One bottle of OmegaPlex, Two boxes of AdvoCare Spark, One box of MNS 3, C or E, and One box of Meal Replacement Shake." *Id.* ¶ 58. He claims to have spent "at least three hundred dollars (likely far more) for these products" and, after consuming them as directed, "did not experience a restarting of his metabolism" but instead suffered from sickness, sullenness, jitteriness, lethargy, weakness, and other ill-effects. *Id.* ¶¶ 59–76. He concludes that "[n]one of the Defendant[']s products purchased and consumed . . . provided him the promised benefits." *Id.* ¶ 77.

Plaintiff Baker purchased a bundle containing the same products as Tubbs's. *Id.* ¶ 79. She "spent over $200 on the products" but, like Tubbs, "received none of [the promised] benefits" and instead "became so ill that she had to tell her trainer that she was unable to continue to work out while taking the 24-Day Challenge products." *Id.* ¶¶ 80–88.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4454 PSG (AJWx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | Michael Tubbs et al. v. AdvoCare International, L.P. et al. | | |

B.    <u>Procedural History</u>

Plaintiffs filed their first amended complaint ("FAC") in Los Angeles County Superior Court on May 5, 2017, alleging false advertising and fraudulent practices premised on various violations of California law. *See* Dkt. # 1-3. After removing the case to this Court, *see* Dkt. # 1, Defendant moved to dismiss Plaintiffs' FAC in its entirety, *see* Dkt. # 17.

The Court granted the first motion to dismiss. *See* Dkt. # 41 ("*First MTD Order*"). Defendant argued that "Plaintiff[s'] amended complaint contains various procedural and substantive defects, including the fundamental flaw that Plaintiffs allege that Defendant's marketing is *unsubstantiated*, not *false*, and [w]ell-established authority holds that private plaintiffs are barred from alleging mere lack of substantiation in advertising." *Id.* at 3 (emphasis in original and internal quotation marks omitted). The Court agreed, noting that "California law does not provide for a private cause of action to enforce the substantiation requirements of California's unfair competition and consumer protection laws," *id.* at 8 (quoting *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1091 (9th Cir. 2016)), and that "Plaintiffs' attempts to demonstrate the falsity of Defendant's representations—a strategy that can be used to cure the lack-of-substantiation defect—[were] insufficient" because they offered "no more than the sorts of vague allegations and conclusory statements that have been deemed insufficient by courts in similar cases." *First MTD Order* at 9–10. In the absence of "relevant, logically related scientific studies [or] anecdotal experience that goes beyond vague, conclusory allegations," Plaintiffs could not "plead facts sufficient to demonstrate falsity," and so Defendant's motion to dismiss was granted. *Id.* at 12. The Court granted leave to amend to give Plaintiffs the opportunity to cure these insufficiencies. *Id.* at 13.

Plaintiffs filed a second amended complaint ("SAC"), *see* Dkt. # 42, which the Court again dismissed, *see* Dkt. # 48 ("*Second MTD Order*"). Plaintiffs attempted to overcome the lack-of-substantiation defect by citing "two professionals"—"one Registered Dietician/Licensed Dietician/Nutritionist and one Masters of Science and [registered nurse]"—who expressed their skepticism as to Defendant's products in blog posts. *Id.* at 6. However, the Court concluded that these "blog posts are hardly the sort of scientific literature that other courts have deemed sufficient to survive a motion to dismiss on similar claims." *Id*. Although Plaintiffs also offered an expert report along with their opposition, the Court noted that it could not consider it because "it was not attached to the SAC and [was] not properly subject to judicial notice (and indeed, judicial notice was not sought by Plaintiffs)." *Id.* at 7. Although Plaintiffs also expanded on their own experiences with Defendant's products in order to demonstrate false advertising—allegations that were "certainly more colorful and substantial than those that were previously dismissed"—the Court still found these claims insufficient because "[w]ithout [] specific allegations, it is difficult to make a clear connection between Defendant's allegedly false

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-4454 PSG (AJWx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | Michael Tubbs et al. v. AdvoCare International, L.P. et al. | | |

claims and Plaintiffs' experiences; in other words, explain why these experiences meant Defendant's advertising was false." *Id.* at 8–9 (internal quotation marks omitted).

The Court granted leave to amend for a second time, reasoning as follows:

> On one hand, the Court is reluctant to grant Plaintiffs leave to amend because their SAC is insufficient for the same reasons that were discussed in the Court's prior dismissal order. On the other hand, although the Court will not consider Plaintiffs' additional scientific evidence at this time because it was not properly attached to the complaint, Plaintiffs' interest in vindicating their claims compels the Court to grant leave to amend so that this new evidence—and any other credible and substantive allegations that might be added in line with the Court's analysis—can be properly pleaded in a new complaint. The Court cautions Plaintiffs that additional leave to amend will not be forthcoming and urges them to marshal credible scientific studies and additional, *specific* allegations of personal experience for their third amended complaint.

*Id.* at 11 (emphasis in original).

Plaintiffs subsequently filed a third amended complaint ("TAC"), in which they allege the following causes of action:

> First Cause of Action: Unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code §§ 17200 et seq. *TAC* ¶¶ 90–102.
>
> Second Cause of Action: Unfair, deceptive, and misleading advertising in violation of California Business & Professions Code §§ 17500 et seq. *TAC* ¶¶ 103–115.
>
> Third Cause of Action: Breach of implied warranty in violation of California Uniform Commercial Code ("UCC") §§ 2314 and 2315 and common law. *TAC* ¶¶ 116–21.
>
> Fourth Cause of Action: Breach of express warranty in violation of California UCC § 2313. *TAC* ¶¶ 122–28.
>
> Fifth Cause of Action: Violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq. *TAC* ¶¶ 129–36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4454 PSG (AJWx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | Michael Tubbs et al. v. AdvoCare International, L.P. et al. | | |

Defendant again moves to dismiss the complaint, arguing that "Plaintiffs' third bite at the apple fares no better than the first two" because they "fail yet again to allege any facts that could plausibly show AdvoCare's advertising is false." *Mot.* 1:9–11.

II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rather, a plaintiff must identify each defendant's role in the alleged scheme. *See id.* at 765.

III.    Discussion

As the Court has discussed in its previous orders, under California law, requests for substantiation can only be made by a select set of authorities enumerated by statute. *See* Cal Bus. & Prof. Code § 17508(b); *see also Stanley v. Bayer Healthcare LLC*, No. 11cv862-IEG(BLM), 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012) ("[O]nly prosecuting authorities may require an advertiser to substantiate its advertising claims."). Consequently, it is well-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4454 PSG (AJWx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | Michael Tubbs et al. v. AdvoCare International, L.P. et al. | | |

settled under California law that *private* litigants may not bring claims pursuant to state consumer protection laws that are premised on alleged lack of substantiation. *See National Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1345 (2003) ("The Legislature has expressly permitted prosecuting authorities, but not private plaintiffs, to require substantiation of advertising claims."); *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW(JEMx), 2013 WL 658251, at *4 (C.D. Cal. Feb. 21, 2013) ("Defendant is undoubtedly correct that Plaintiff may not base her claims on any purported lack of substantiation."); *Stanley*, 2012 WL 1132920, at *3. The Ninth Circuit recently reaffirmed this basic principle in *Kwan*, holding that "California law does not provide for a private cause of action to enforce the substantiation requirements of California's unfair competition and consumer protection laws." *Kwan*, 854 F.3d at 1091; *see also Engel v. Novex Biotech, LLC*, 689 F. App'x 510, 510 (9th Cir. 2017) ("Neither California's Unfair Competition Law ('the UCL') nor its Consumer Legal Remedies Act ('the CLRA') provides consumers with a private cause of action to enforce the substantiation provisions of California's unfair competition or consumer protection laws.").

Because Plaintiffs cannot mount a lack-of-substantiation claim, they must instead plead facts to demonstrate that Defendant's advertising was *false*, which can be accomplished through personal experience or persuasive studies. *See, e.g.*, *Melgar v. Zicam LLC*, No. 2:14-cv-00160-MCE-AC, 2016 WL 1267870, at *10 (E.D. Cal. Mar. 31, 2016) (quoting *Forcellati v. Hyland's Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *14 (C.D. Cal. Apr. 9, 2014)) (determining that plaintiff could "affirmatively prove Defendants' products are no more effective than a placebo" using "testing, scientific literature, [and] anecdotal evidence").

    A.    <u>Scientific Studies</u>

The Court will begin my considering the two new studies that Plaintiffs have included in their TAC.[1]

        i.    *The Sprint Study*

The first new addition is a study from the *International Journal of Sport Nutrition and Exercise Metabolism* titled "Acute Effects of a Caffeine-Taurine Energy Drink on Repeated Sprint Performance of American College Football Players" ("the Sprint Study" or "the Study").

---

[1] Plaintiffs continue to rely in part on three articles—a *Nutrition Reviews* piece, a *New York Times* article, and a report from the European Food Safety Authority, *see TAC* ¶¶ 29, 33–34, 40—and two blog posts—authored by Laura Zavadil and Katy Haldiman, *see id.* ¶¶ 35–36—that this Court has already deemed unpersuasive and insufficient to cure the lack-of-substantiation defect. *See First MTD Order* at 10–11; *Second MTD Order* at 6–7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4454 PSG (AJWx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | Michael Tubbs et al. v. AdvoCare International, L.P. et al. | | |

*See* Dkt. # 53-1 ("*Sprint Study*"). The Court concludes that this study is unpersuasive in context. To begin, the stated purpose of the Sprint Study was to "investigate the acute effects of a low-calorie caffeine-taurine energy drink (AdvoCare Spark) on repeated sprint performance and anaerobic power in National Collegiate Athletic Association (NCAA) Division I football players." *Id.* at 110. Although it is notable that the Study actually examined one of the products at issue in this litigation, its focus on Division I college athletes—which Plaintiffs do not claim to be—limits its usefulness in this case. As Defendant correctly characterizes the study, "It has nothing to say about how consumers such as Plaintiffs . . . might benefit from using Spark outside of a timed-sprinting scenario." *Mot.* 15:5–7. Furthermore, the Sprint Study does not analyze or even mention any of the advertisements that are at the center of Plaintiffs' suit.

Plaintiffs' attempts to connect the Study to their own experiences are unavailing. Plaintiff Tubbs alleges that, after taking Defendant's "catalyst pills," he was "unable to complete weight and cardio exercises at their normal intensity and duration," he "noticeably lost muscle tone, and "[h]is bench pressing and cardiovascular exercises decreased in total weight and duration and did not increase as advertised." *Compl.* ¶ 76. "This," he concludes, "is consistent with the findings of the [Sprint Study] results." *Id*. There are several problems with this conclusion. First, the Sprint Study focused on Spark, not Defendant's catalyst pills. Second, the Study examined repeated sprint performances by college athletes, not weightlifting by non-athlete consumers. And finally, the Study does *not* appear to suggest that Spark *decreases* athletic performance. The Study concludes that "ingestion of AdvoCare Spark . . . did not *improve* repeated sprint times or anaerobic power," *Sprint Study* at 114 (emphasis added); it does not conclude, as Plaintiff Tubbs does, that ingesting Spark decreases performance. Indeed, the Study indicates that some "caffeine-naïve participants" may have "received more of an ergogenic benefit from the energy drink," and concludes that "more research is needed to further examine this finding that caffeine habituation may be a significant cofactor in the efficacy of energy drinks for enhancing anaerobic performance." *Id.* at 114–15. In short, the results of the Sprint Study neither reflect Plaintiff Tubbs's experience nor serve as independent evidence that Defendant's advertisements were false. Plaintiff Baker also alleges that her experiences were "consistent with the findings" of the Sprint Study, *Compl.* ¶ 83, but this comparison suffers from the same shortcomings as Plaintiff Tubbs's.

In short, the Court concludes that the Sprint Study is not compelling evidence of false advertising on the part of Defendant and does not serve to buttress Plaintiffs' allegations.

   ii.  The Tackett Report

Plaintiffs have also added a report ("the Tackett Report" or "the Report") by Randall L. Tackett, Ph.D, a pharmacologist and toxicologist who serves as a professor in the Department of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4454 PSG (AJWx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | Michael Tubbs et al. v. AdvoCare International, L.P. et al. | | |

Clinical and Administrative Pharmacy in the College of Pharmacy at the University of Georgia. *See* Dkt. # 53-2 ("*Tackett Report*"), at 1. Despite Dr. Tackett's credentials, the report he has prepared for Plaintiffs is unpersuasive. In the section of the Report titled "Opinions," he primarily relies on secondary sources that do not appear to have examined Defendant's products specifically. *See id.* at 3–4. He also cites to the Sprint Study, *see id.* at 4, but as discussed above, the Court does not conclude that the Study's results support Plaintiffs' claims.

Dr. Tackett concludes that "[t]he plaintiffs in this case experienced no benefit of using Spark" and that "the adverse effects reported by the plaintiffs . . . are consistent with those events being produced by Spark." *Id.* at 4. However, he cites to no research by himself or others, other than the Sprint Study, to support these propositions. He apparently conducted no trials or independent analyses to substantiate his views, relying only on "the claims of AdvoCare, the list of its ingredients, and the scientific literature, as well as [use of] the product [him]self." *Id*. Previously, the Court "described the sort of scientific evidence that ought to be considered in cases like this." *Second MTD Order* at 7; *see also Sonner v. Schwabe N. Am., Inc.*, 231 F. Supp. 3d 502, 509 (C.D. Cal. 2017) (citing Federal Judicial Center et al., *Reference Manual on Scientific Evidence* 723–24 (3d ed. 2011)) ("A fundamental principle of evidence-based medicine is that the strength of medical evidence supporting a therapy or strategy is hierarchical. When ordered from strongest to weakest, systematic review of randomized trials (meta-analysis) is at the top, followed by single randomized trials, systematic reviews of observational studies, single observational studies, physiological studies, and unsystematic clinical observations."); *Aloudi v. Intramedic Research Grp.*, No. 16-15876, 2017 WL 6397259, at *2 (9th Cir. Dec. 15, 2017) (determining that a study that did not "involve[] scientific testing of the actual" product at issue "or a product with the same active ingredients as" the product at issue did not support a false advertising claim). Dr. Tackett's report, which relies on a review of unpersuasive literature and unsubstantiated conclusions, falls well short of the sort of studies that courts have relied on to support false advertising claims.

B. <u>Personal Experience</u>

Because Plaintiffs' TAC does not include credible or persuasive scientific studies to support their false advertising claims, they must rely solely on their personal experiences.

As the Court has previously discussed, it is difficult for a plaintiff to make a credible false advertising claim by relying solely on anecdotal evidence. *See, e.g.*, *Aloudi*, 2017 WL 6397259, at *2 ("[F]ailure to produce [results] in a single individual is insufficient to show the falsity of [defendant's] advertising assertion."); *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD, 2012 WL 5382218, at *3 n. 2 (S.D. Cal. Nov. 1, 2012) ("[I]t's really only scientific testing that can show a supplement's claims to truly be false and/or misleading."). Because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4454 PSG (AJWx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | Michael Tubbs et al. v. AdvoCare International, L.P. et al. | | |

"health . . . is probably influenced by a number of variables," *Eckler*, 2012 WL 5382218, at *3 n. 2, and because misrepresentation cannot be plausibly inferred from only a single instance of a product's failure to deliver promised results, a "high[] degree of detail and specificity" is needed to cure the lack-of-substantiation defect. *Second MTD Order* at 9.

Although the TAC includes additional details relating to Plaintiffs' personal experiences, the Court concludes once more that the allegations are insufficient. Specific information is provided—for example, "Plaintiff Tubbs estimates that his normal resting pulse rate of 80-90 bpm increased to approximately 110-120 bpm while taking Defendant['s] products" and the he "gained more than 8 pounds," *Compl.* ¶ 65—but these allegations are not connected to specific products, specific supporting studies, or specific advertisements. Plaintiffs do not describe *when* they consumed Defendant's products, *how much* was consumed, or for *how long* the ingestion continued. Nor, for that matter, do they describe physician's visits or similar information that might be used to exclude other potential causes for the alleged symptoms—a concern the Court previously articulated. *See First MTD Order* at 11 n. 2; *Second MTD Order* at 9 ("Greater detail and specificity in Plaintiffs' allegations would help persuade the Court that *other* variables did not cause the alleged ill-effects, which would create a plausible claim that Defendant's products could not yield the benefits it promised.") (emphasis in original). Consequently, Plaintiffs' claims are "just as speculative" as they allege Defendant's products' benefits to be. *First MTD Order* at 11 n. 2 (quoting *Eckler*, 2012 WL 5382218, at *3 n. 2).

The Court previously concluded that Plaintiffs' FAC contained "neither relevant, logically related scientific studies nor anecdotal experience that goes beyond vague, conclusory allegations." *First MTD Order* at 12. It then concluded that the SAC's claims were "not sufficiently specific and plausible to overcome the absence of relevant, persuasive scientific studies." *Second MTD Order* at 9. Although Plaintiffs' TAC contains additional allegations, considering the ongoing absence of persuasive scientific studies and the insufficiency of the anecdotal evidence provided, the Court agrees with Defendant that "[n]othing in the TAC calls for a different conclusion." *Mot.* 20:27–28. Plaintiffs continue to allege nothing more than a lack-of-substantiation claim, which cannot be maintained under California law. Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' third amended complaint.

IV.     Leave to Amend

Plaintiffs again seek leave to amend. *See Opp.* 21:10–21.

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Court considers whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4454 PSG (AJWx) | Date | March 21, 2018 |
|---|---|---|---|
| Title | Michael Tubbs et al. v. AdvoCare International, L.P. et al. | | |

amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

The Court indicated in its second dismissal order that leave to amend would not be granted for a third time because the SAC was "insufficient for the same reasons that were discussed in the Court's prior dismissal order." *Second MTD Order* at 11. The Court gave Plaintiffs the opportunity to "marshal credible scientific studies and additional, *specific* allegations of personal experience for their third amended complaint," *id.* (emphasis in original), but despite their best efforts, the TAC nevertheless falls short of pleading plausible claims for relief. The Court therefore concludes that further amendment would be futile and **DENIES** leave to amend.

V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' third amended complaint in its entirety. Because the Court also **DENIES** leave to amend, this order closes the case.

**IT IS SO ORDERED.**